```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| ARTEMI LTD., | : | HONORABLE JOSEPH E. IRENAS |
| | : | Civ. Action No. 03-3382(JEI/AMD) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| | : | |
| SAFE-STRAP CO., INC., | : | |
| | : | |
| Defendant. | : | |

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
By: Joseph P. Lasala, Esq.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962

and

PAZUNIAK LAW OFFICE
By: George Pazuniak, Esq.
1201 North Orange Street
7th Floor, Suite 7114
Wilmington, Delaware 19801
        Counsel for Plaintiff


MULLEN & REYNOLDS, LLC
By: Eugene G. Reynolds, Esq.
101 Gibraltar Drive, Suite 1E1
Morris Plains, New Jersey 07950

and

OSTRELENK FABER LLP
By: Louis C. Dujmich, Esq.
1180 Avenue of the Americas
New York, New York 10036
        Counsel for Defendant

**IRENAS**, Senior District Judge:

This is a patent infringement suit.[1] Plaintiff Artemi's patented device is the Spacemaker, which is a hook with a strap attached. The Spacemaker is used to increase the number of clothes hangers that can be hung on a single rail. Defendant Safe-Strap designed and sells a similar product, the Hanger-Under, which Artemi asserts infringes its patent.

Presently before the Court is Plaintiff Artemi's Motion to Dismiss four of Defendant Safe-Strap's affirmative defenses and Safe-Strap's counterclaims. Safe-Strap opposes the Motion, and has also cross-moved to amend its Answer. Artemi mainly opposes the Motion to Amend, arguing that the proposed amendments do not cure the asserted deficiencies in the affirmative defenses and counterclaims.[2]

For the reasons stated herein, Artemi's Motion to Dismiss will be granted in part and denied in part, and Safe-Strap's Motion to Amend will be granted in part and denied in part.

**I.**

This Court has already written an opinion discussing the

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[2] With respect to Safe-Strap's 11th Affirmative Defense only, Artemi agrees that the Proposed Amended Answer cures the legal defect identified in the initial moving papers. The issue with respect to the 11th Affirmative Defense is now moot.

2

allegations of Artemi's Third Amended Complaint, *see Aretmi, Ltd. v. Safe Strap Co., Inc.,* -- F.Supp.2d --, 2013 WL 2367874 (D.N.J. May 30, 2013). Those allegations are not directly relevant to the issues raised by the instant motions. Rather, Safe-Strap's affirmative defenses and counterclaims focus on Aretmi's alleged actions before the USPTO during the rexamination and reissue proceedings which resulted in the patent-in-suit, Reissue Patent 42,568 (the "RE'568 Patent").

Safe-Strap's theory of its case is that Artemi became aware of the Hanger-Under and then sought reexamination of the Spacemaker's patent with the express purpose of re-writing the patent claims to encompass the Hanger-Under. According to Safe-Strap, the reexamination and reissue proceedings were nothing but a set-up for this patent infringement suit, which Safe-Strap vehemently contends is frivolous. In support of its theory, Safe-Strap alleges the following.

Safe-Strap began selling its Hanger-Under in 2001. (Proposed Amended Answer, "PAA", ¶ 26) "Prior to any sales activity," Safe-Strap inquired as to whether the Hanger-Under infringed Artemi's patent. (Id.) In an opinion dated February, 28, 2001, Safe-Strap's patent counsel "unequivocally found that Safe-Strap's design did not infringe the [] patent." (Id.) Also in 2001, Artemi allegedly became aware of the Hanger-Under. (PAA ¶ 25)

According to Safe-Strap, the Hanger-Under and the Spacemaker were different from the start.  Both devices have two basic parts: a hook that resembles a coat hanger hook, and a strap that loops down from the hook. (See PAA ¶¶ 27-31)  But the devices have two significant differences: (1) the Spacemaker's strap is adjustable (i.e., the loop can be made larger or smaller), whereas the Hanger-Under's strap is not adjustable; and (2) the Spacemaker's strap is connected to the hook through a circular ring, whereas the Hanger-Under's strap is connected to the hook through a rectangular slot.  (PAA ¶¶ 27-28)  Thus, according to Safe-Strap, Artemi knew all along that the Hanger-Under did not infringe the patent for the Spacemaker.

Artemi's knowledge notwithstanding, Safe-Strap alleges that on May 10, 2002, Artemi filed its Request for Reexamination with the USPTO "with an ulterior purpose of trying to rewrite and/or reinterpret the meaning of the patent claims . . . to try to cover" the Hanger-Under.  (PAA ¶ 34)  In other words, Safe-Strap asserts that Artemi filed its reexamination request to set the stage for the patent infringement suit that it would later file with this Court in 2003.

Safe-Strap further contends that Artemi was ultimately successful in its plan to rewrite the patent (although Safe-Strap still disputes that it has infringed even the re-written patent). Safe-Strap contends that, first, during reexamination Aretmi

4

tried to change the meaning of the original patent claim 1 to effectively eliminate the difference between the Spacemaker's circular ring and the Hanger-Under's rectangular slot. (PAA ¶¶ 35-36) Claim 1, however, "was prosecuted to a final rejection." (PAA ¶ 37)

Undeterred, Artemi took a different approach. It filed a reissue application allegedly seeking to introduce an entirely new claim-- claim 8-- which would allegedly accomplish the same goal it tried to achieve during reexamination. (PAA ¶ 38) Specifically, Safe-Strap relies on the difference between the original language of the patent (the '455 patent) and the language of the reissued patent, RE'568, to support its theory that Artemi rewrote its patent specifically to cover the Hanger-Under.

Claim 1 of '455 described the circular ring-portion of the Spacemaker this way: "a first part . . . in the form of a hook . . . the first part further having a ring spaced from the hook, <u>the ring having a curved upper internal surface</u> to facilitate carrying a plurality of garments by hand." (PAA ¶ 28; emphasis in PAA)

Claim 8 of RE'568 describes the same part of the Spacemaker this way: "a first part . . . in the form of a hook . . . the first part further having a ring spaced from the hook, the ring <u>having a curved upper internal surface located on an exterior of</u>

<u>the ring and facing internally with respect to the hook</u> to facilitate carrying a plurality of garments by hand." (emphasis added).

According to Safe-Strap, this change is critical: "[t]he curved upper <u>internal</u> surface of the ring was now recited as being on 'an exterior of the ring and facing internally with respect to the hook.' Artemi moved the curved upper internal surface from the inside of the ring to the outside of the ring," thereby "enlarging the [original] claim" and making the Spacemaker look more like the Hanger-Under. (PAA ¶ 39)

Based on these alleged facts, Safe-Strap asserts two affirmative defenses: inequitable conduct (10th Affirmative Defense), and patent misuse (14th Affirmative Defense); and one counterclaim: abuse of process (Counterclaim 3).[3] Artemi moves to dismiss the affirmative defenses and counterclaim as legally insufficient. It also moves to dismiss Safe-Strap's counterclaims for declarations of patent invalidity (Counterclaim 1) and noninfringement (Counterclaim 2), asserting that they do

---

[3] In its 18th Affirmative Defense Safe-Strap asserts that "The Complaint has been brought in bad faith as Artemi knows its claims are frivolous in that Safe-Strap's product clearly does not [infringe the patent at issue]. . . . Artemi has willfully and maliciously abused the legal process." (PAA ¶ 61) The Court will treat this affirmative defense as encompassed by Safe-Strap's abuse of process counterclaim. *Compare* PAA Counterclaim 3, ¶ 79 ("Artemi is liable for malicious prosecution and/or an abuse of process under federal and/or common law for its knowing and willful filing and service of a frivolous complaint based on false allegations of patent infringement.").

6

not comply with the pleading standards articulated in *Twombly* and *Iqbal*.

## II.

Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave" to amend a pleading "when justice so requires."  The decision to grant leave to amend rests within the discretion of the court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court may deny leave to amend when the amendment would be futile.  *Free Speech Coal., Inc, v. Attorney Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012).  Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012).

## III.
### A.

Safe-Strap argues that Artemi's alleged actions before the USPTO are sufficient to support affirmative defenses of inequitable conduct and patent misuse.  The Court disagrees.

### 1. Inequitable conduct

7

"To prevail on an inequitable conduct charge, a defendant must present evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the PTO." *Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009).

Safe-Strap asserts that Artemi's entire goal during the reexamination and reissue proceedings was to "mislead [the USPTO] to believe that the curved upper surface of the [Spacemaker's] ring was on the outside of the ring and not as originally claimed on the inside of the ring." (PAA ¶ 44) Safe-Strap then gives specific examples of how "Artemi and his attorney materially misrepresented what the original claim meant" (PAA ¶ 43):

- "[i]n the Reexamination Request, Artemi misrepresented that the 'curved upper <u>internal</u> surface' of the ring was not the internal surface but the <u>exterior</u> surface of the ring facing internally with respect to the hook, i.e., facing the hook." (PAA ¶ 35; emphasis in PAA)

- "Artemi pointed to the language of the claim that the curved upper internal surface of the ring was 'to facilitate carrying a plurality of garments by hand. Artemi asserted in sworn declarations that this language meant that the ring's curved <u>upper internal</u> surface was really on the exterior of the ring, despite the express language of the claim that it was on the inside." (PAA ¶ 36; emphasis in PAA)

- "In response to [the Patent Examiner's] rejection [of new claim 8 during reissue proceedings], Artemi amended claim 8 to remove the word 'internal' from the recitation of 'the

8

>     ring having a curved upper internal surface.'
>     Claim 8 as further amended now recited 'the
>     ring having a curved upper surface located on
>     an exterior of the ring and facing internally
>     with respect to the hook.' This completely
>     changed the meaning of the original patent
>     claim." (PAA ¶ 41)[4]

The issue is whether these alleged "material misrepresentations" are actionable. The Court concludes that they are not.

None of the alleged "misrepresentations" identified by Safe-Strap are misrepresentations of fact, but rather as Safe-Strap itself contends, interpretations of meaning. Advocating for a particular understanding of a claim's language during reexamination and reissue does not violate an applicant's duty of candor to the USPTO. As Artemi correctly observes, "applicants can make their best argument to the examiner about what they think the patent and claims say." (Reply Br. p. 7)

In *Young v. Lumenis, Inc.,* the Federal Circuit held that "attorney argument" concerning "interpretation of what prior art discloses" was not a material misrepresentation because the statement at issue "was not demonstrably false." 492 F.3d 1336, 1349 (Fed. Cir. 2007). Similarly here, whether the "curved

---

[4] Safe-Strap later acknowledges that "[a]fter the decision on appeal, the Examiner required Artemi to reinsert the word 'internal' into claim 8 and other claims where it had been removed," (PAA ¶ 46), and indeed, claim 8 of RE'568, as quoted *supra*, includes the word "internal."

9

surface" recited in the original patent referred to the outside of the ring or the inside of the ring is not something that is objectively verifiable. Both surfaces are curved.

Accordingly, Safe-Strap's inequitable conduct affirmative defense fails as a matter of law. Safe-Strap's Motion to Amend will be denied, and Artemi's Motion to Dismiss will be granted as to this issue.

### 2. Misuse

Safe-Strap argues that Artemi's alleged scheme to re-write its patent to cover the Hanger-Under and then file this infringement action constitute patent misuse. The Court disagrees.

Several decades-worth of Supreme Court jurisprudence makes clear that the defense of patent misuse must be based on allegations that the patentee "extend[ed] the term of his *[patent] monopoly* beyond that granted by law." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136 (1969) (emphasis added); *see also Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 343-44 (1971) ("The far-reaching social and economic consequences of a patent . . . give the public a paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope. One obvious manifestation of this principle has been the series of

10

decisions in which the Court has condemned attempts to broaden the physical or temporal scope of the patent monopoly."); *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.,* 329 U.S. 637, 643-44 (1947) (stating that "a patentee [is limited] to the monopoly found within the four corners of the grant" and may not use that monopoly power "to acquire a monopoly not embraced in the patent.").

Safe-Strap does not allege facts supporting a conclusion that Artemi misused its monopoly power to obtain a benefit in the market, and therefore its defense fails as a matter of law.

First, the allegations concerning misrepresentations made to the USPTO during reexamination and reissue cannot support a defense of patent misuse because those alleged actions could not possibly exploit the *monopoly power* granted by the patent. Rather, those alleged actions could only define the scope of the monopoly in the first place. The distinction is chronological. A patentee cannot exploit its monopoly power without first having the bounds of that power defined during reexamination and reissue. *Cf. Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492 ("the public policy which includes inventions within the granted monopoly excludes from it all that is not embraced within the invention. It equally forbids the use of the patent to secure an exclusive right or limited monopoly not *granted by the Patent Office*.") (emphasis added). In short, Safe-Strap alleges

11

that Artemi impermissibly expanded the scope of the patent itself, not that Artemi expanded the monopoly power conferred by the patent after it was granted by the USPTO.

Similarly, the filing of an allegedly frivolous patent infringement suit is not misuse of the patent's monopoly power. Artemi's monopoly power (no matter what its bounds) does not enable it to bring this suit. Rather, Artemi may pursue this suit by virtue of Congress's statutory grant of a remedy for patent infringement, namely 35 U.S.C. § 271.

Safe-Strap's patent misuse affirmative defense fails as a matter of law. Safe-Strap's Motion to Amend will be denied, and Artemi's Motion to Dismiss will be granted as to this issue.

**B.**

Artemi asserts that Safe-Strap's abuse of process counterclaim fails to state a claim. The Court disagrees.[5]

Safe-Strap alleges that Artemi filed this infringement suit, and then after reissue, continued to pursue this suit, knowing all along that the suit was "frivolous." (Reply Br., p. 6) Safe-Strap alleges that Artemi's motivation in pursuing this

---

[5] Safe-Strap has asserted a counterclaim for "malicious prosecution and/or abuse of process." (PAA ¶ 79) A malicious prosecution claim, however, can be based only on a criminal proceeding, not a civil suit. *See LoBiondo v. Schwartz,* 199 N.J. 62, 89 (2009). Thus, Artemi is correct that the malicious prosecution counterclaim fails as a matter of law.

litigation lies not in protecting its patent rights (which Safe-Strap asserts are not even remotely threatened), but rather in interfering with Safe-Strap's business. Such allegations are sufficient to support a "malicious use of process" claim under New Jersey law, provided, of course, that Artemi's infringement claims are "terminated favorably" to Safe-Strap. *LoBiondo v. Schwartz,* 199 N.J. 62, 90-91 (2009).

Nor is the malicious use of process claim preempted by federal law, as Artemi asserts. The federal preemption cases Artemi relies upon[6] merely stand for the proposition that common law tort claims of abuse of process cannot be based on "bad faith misconduct before the PTO." *Semiconductor Energy*, 204 F.3d at 1382. Accordingly, allegations supporting an inequitable conduct defense cannot simultaneously support an abuse of process claim. *See id.* (affirming trial court's holding that New Jersey RICO law counterclaims were preempted, explaining that the "counterclaims occupy a field identical in scope with the inequitable conduct defense.").

Here, however, Safe-Strap's malicious use of process claim is not based on Artemi's alleged actions before the PTO, but rather the initiation and continued pursuit of the instant suit.

---

[6] *Sign-A-Way, Inc. v. Mechtronics Corp.*, 2000 U.S. App. LEXIS 6230 (Fed. Cir. 2000); *Semiconductor Energy Laboratory Co., Ltd. v. samsung Electronics Co., Ltd.*, 204 F.3d 1368 (Fed. Cir. 2000); and *Abbott Laboratories v. Brennan*, 952 F.2d 1346 (Fed. Cir. 1991).

13

The counterclaim is not preempted.

As to Safe-Strap's "abuse of process" counterclaim Artemi's Motion to Dismiss will be denied and Safe-Strap's Motion to Amend will be granted.

## C.

Lastly, Artemi's *Iqbal / Twombly* argument is a red herring. Even if the Court were to grant the Motion to Dismiss Counterclaims 1 and 2, the issues of patent invalidity and noninfringement would remain in the case as defenses. Indeed, Safe-Strap has asserted invalidity and noninfringement as defenses (see PAA ¶¶ 15-18) and Artemi does not move to dismiss those defenses.

Moreover, the counterclaims, when read in the context of the Proposed Amended Answer as a whole, adequately put Artemi on notice as to the factual basis of Safe-Strap's defenses. *Cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'").

Accordingly, Artemi's Motion to Dismiss Counterclaims 1 and

2 will be denied.[7]

**IV.**

For the foregoing reasons, Artemi's Motion to Dismiss will be granted as to: (1) Safe-Strap's affirmative defenses of inequitable conduct and patent misuse, and (2) Safe-Strap's counterclaim for "malicious prosecution"; and denied in all other respects.  Safe-Strap's Motion to Amend will be denied as to: (1) its affirmative defenses of inequitable conduct and patent misuse, and (2) its counterclaim for "malicious prosecution"; and granted in all other respects.

An appropriate Order accompanies this Opinion.


Date: December 27, 2013          s/ Joseph E. Irenas
                                 **JOSEPH E. IRENAS, S.U.S.D.J**

---

[7] Artemi also objects to Safe-Strap's claim to attorneys fees under 35 U.S.C. § 285 if Safe-Strap prevails on its counterclaims.  Artemi's reasoning for that objection is not clear, particularly considering that Artemi itself seeks the same relief in its complaint against Safe-Strap.
    In any event, decisions concerning entitlement to attorneys fees can abide the resolution of the merits of this suit. Artemi's Motion to Dismiss as to this issue will be denied without prejudice.