**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ARTEMI, LTD., and PAUL ARTEMI,:    Civil No. 03-3382 (JEI/AMD)
                         :
        Plaintiffs,      :           **OPINION**
                         :
        v.              :
                         :
SAFE-STRAP CO., INC.,     :
                         :
        Defendant.     :

**APPEARANCES:**

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
By:  Joseph P. Lasala, Esq.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962

    and

PAZUNIAK LAW OFFICE
By:  George Pazuniak, Esq.
1201 North Orange Street
7th Floor, Suite 7114
Wilmington, Delaware 19801
             Counsel for Plaintiff

MULLEN & REYNOLDS, LLC
By:  Eugene G. Reynolds, Esq.
101 Gibraltar Drive, Suite 1E1
Morris Plains, New Jersey 07950

    and

OSTRELENK FABER LLP
By:  Louis C. Dujmich, Esq.
1180 Avenue of the Americas
New York, New York 10036
             Counsel for Defendant

**IRENAS,** Senior United States District Judge:

This is a patent infringement suit.  The Court conducted a
*Markman* hearing on June 25, 2014.  This opinion construes the
four disputed terms of Reissued Patent 42,568 (the RE'568
patent) which discloses a "device for holding garment hangers,"
commercially known as the Spacemaker.

## I.

The two prior opinions in this case, *Artemi Ltd. v. Safe-
Strap Co.*, 947 F. Supp. 2d 473 (D.N.J. 2013), and *Artemi Ltd. v.
Safe-Strap Co.*, 2013 U.S. Dist. LEXIS 181273 (D.N.J. Dec. 27,
2013), provide the factual and procedural background for this
claim construction opinion.

The terms to be construed are:

*Term 1:* "a ring"

*Term 2:* "the first part further having a ring spaced
from the hook, the ring having a *curved upper internal
surface* to facilitate carrying a plurality of garments
by hand" (emphasis added)

*Term 3:* "the first part further having a ring spaced
from the hook, the ring having a curved upper internal
surface *located on an exterior of the ring and facing
internally with respect to the hook* to facilitate
carrying a plurality of garments by hand" (emphasis
added)

*Term 4*: "adjustable means for altering the distance
between the second part and the first part"

## II.

Claim construction is a matter of law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

The Court begins a claim construction analysis by examining the intrinsic evidence, which includes the claims, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "A claim construction analysis must begin and remain centered on the claim language itself." *Innova*, 381 F.3d at 1116. There is a heavy presumption that a claim term conveys its ordinary and customary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. But a patentee may overcome this presumption and choose "to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *see also Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir.

2000); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995), aff'd 517 U.S. 370 (1996).

The claims themselves and the context in which a term is used within the claims can "provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  In addition, other claims of the patent may be useful in construing a claim term, as "claim terms are normally used consistently throughout the patent." *Id*.  Similarly, claims that differ from each other may provide insight into how a term should be read.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991).

After examining the claims, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582.  "For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman*, 52 F.3d at 979.  For this reason, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

Finally, the Court should also examine the prosecution history, if it is in evidence.  *Phillips*, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the

claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"[I]deally there should be no 'ambiguity' in claim language to one of ordinary skill in the art that would require resort to evidence outside the specification and prosecution history." *Markman*, 52 F.3d at 986.  But if the term remains unclear or unambiguous after examining the intrinsic evidence, the Court may turn to extrinsic evidence.  *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995). "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980.  Although extrinsic evidence is useful in determining how a person of ordinary skill in the art would understand the term, it is less reliable for the purposes of claim construction than the patent and its prosecution history. *Phillips*, 415 F.3d at 1318-19.  Therefore, extrinsic evidence must be viewed within the context of intrinsic evidence.  *Id.* at 1319.

### III.

The Court addresses one initial issue before turning to the disputed terms.

### A.

Safe-Strap asks this Court to "construe" the original '455 patent, arguing that the "proper construction" of the '455 patent informs the Court's construction of the reissued patent. Artemi disagrees, arguing that the Court may not construe the original patent.

Artemi is correct that there is only one patent at issue in this patent infringement suit-- the reissued patent, not the original patent.[1]  Thus, in this sense the Court may only *construe* the reissued patent; the Court cannot *construe* the original patent.  However, as Artemi's counsel acknowledged at the *Markman* hearing, the language of the original patent is not completely irrelevant to the construction of the reissued patent.

Indeed, particularly with respect to RE'568 claim 2, which Artemi asserts is substantially identical to claim 2 of the original patent, the language of the original patent could be highly relevant.  More generally, to the extent

---

[1]  Pursuant to 35 U.S.C. §§ 251 and 252 the original patent is surrendered upon reissue.

that the language of the original patent forms part of the

prosecution history of the reissued patent, it logically

follows that the Court may consider it in construing the

reissued patent.


### B.

In construing the disputed terms, it is helpful to

begin with a basic understanding of the patented device as a

whole.  The Summary of the Invention discloses two "parts"

of the device: a "first part" which is "made of rigid

plastics material;" and a "second part" "comprising a loop"

formed by a "strap" made of "flexible webbing."  The parties

do not dispute that the second part is "attached to the

first part through the ring." (RE'568 patent claim 2)

The parties, however, do dispute whether the "ring"

means the "hole" in the device, or whether the "ring" means

the plastic material surrounding and defining the hole.  At

the *Markman* hearing, the Court used a doughnut analogy:

Artemi argues that "the ring" is the doughnut, while Safe-

Strap argues that "the ring" is the hole in the doughnut.

Stated in terms of Amended Figure 1a of the specification,

the issue is whether reference number 12 alone is the ring

or whether reference number 11 is also part of the ring.

Safe-Strap proposes that reference number 12 alone is the "ring," but this interpretation cannot be reconciled with the language of the specification which states that reference number 11 is the "curved upper surface" *of the ring*: "The ring has a curved, upper surface 11 on the exterior that faces internally with respect to the hooked portion."

Moreover, this interpretation is consistent with the portions of the prosecution history which Safe-Strap itself relies upon.  In his reexamination request, Artemi stated that, "[t]he 'first part' also includes a 'ring spaced from the hook." This 'ring' is indicated at B [later B became 12] in Figure 1 above and defines hole 4."  (PH-129)

Safe-Strap stops with that sentence and then concludes that B alone must be the ring.  But the very next two sentences of the reexamination request demonstrate that B is only *part* of the ring:  "Claim 1 defines the 'ring' as having 'a curved upper internal surface to facilitate carrying a plurality of garments by hand.'  This claim limitation corresponds to the upper surface of the ring indicated at C [later C became 11] in figure 1 above, which is internal to the 'hook'." (PH-129)  The request then continues, "as can be plainly appreciated from Figure 1, the surface C enables [a] worker to comfortably grasp his hand

8

*around the 'ring'* so as to provide a secure grip for lifting

the device up to disengage the 'hooked portion' from the

rail."  (PH-130) (emphasis added)

Thus, the prosecution history makes clear that B [12]

*and* C [11] *together* make up the "ring."  B alone cannot be

the ring because there is no way for a worker to comfortably

grasp his hand around B only.

Safe-Strap, however, argues that a worker *can* grasp the

device through the hole by inserting an index finger through

the hole and holding it like a teacup.  The Court is not

persuaded by Safe-Strap's argument.

First, it conflicts with the prosecution history, which

clearly demonstrates a person skilled in the art grasping

his or her hand around the outside of the device, not

inserting a finger through the hole of the device.  (PH-191,

459)

Second, Safe-Strap's argument conflicts with the manner

in which the device is intended to be used.  When the loop

contains many hangers holding a "plurality of garments," the

device and garments together will be heavy.  Holding and

carrying a heavy object with a "grip[ped]" (PH-130) fist is

easier and more comfortable than holding and carrying a

heavy object with a single index finger, as Safe-Strap's

counsel proposes. Therefore, the Court rejects Safe-Strap's proposed construction.

However, the Court also does not adopt Artemi's proposed construction of "ring." Artemi proposes that "ring" should mean "closed loop." It appears that Artemi has chosen the word "loop" because it generally denotes a curved, closed figure that could encompass reference numbers 12 and 11 together. But "loop" is a defined term within the patent. "Loop" is the second part of the device, corresponding to reference number 3. Using "loop" to also define a portion of the first part of the device would be internally inconsistent with the language of the patent and confusing.

Defining "ring" as "the bottom half of the 'first part' of the device," however, simultaneously encompasses reference numbers 11 and 12 while avoiding the confusion caused by ascribing two different meanings to the term "loop." Therefore, the Court holds that "ring" is construed as "the bottom half of the 'first part' of the device."

## C.

Safe-Strap argues that "curved upper internal surface" means "the upper internal surface facing the hole identified by reference #4," i.e., the top half of the hole. With the

proper understanding of "ring" (reference numbers 11 and 12) and hole (reference number 4)-- i.e., that hole and ring are not synonymous-- "curved upper internal surface" cannot mean what Safe-Strap proposes for two reasons.

First, had Artemi intended "curved upper internal surface" to identify the upper internal surface of the hole as Safe-Strap argues, consistent with the language of the patent and the reference number scheme, that area would be assigned a reference number.  Yet that area has no specific reference number.  The absence of a reference number suggests that "curved upper internal surface" must identify a portion of the device different from the portion Safe-Strap proposes.

Second, Safe-Strap cannot reconcile its proposed construction with the rest of the term: "to facilitate carrying a plurality of garments by hand."  Making the upper internal surface of the hole curved cannot *facilitate* carrying a plurality of garments by hand for the reasons explained above.

On the other hand, under Artemi's construction-- that "curved upper internal surface" corresponds to reference number 11-- both issues are resolved.  Reference number 4 identifies the entire hole in the "ring"; it encompasses the top internal half of the hole as well as the bottom internal

half, and therefore a separate reference number is unnecessary.

Moreover, curving the surface identified by reference number 11 does make it easier for a person skilled in the art to grab and carry a plurality of garments by hand, as demonstrated in the picture found at PH-191 and PH-459.  As Artemi explained to the Examiner during reissue, "[t]he claimed purpose of [#11] is to 'facilitate carrying a plurality of garments by hand.'  It enables the worker to grasp around the 'first part' for disengaging the hooked portion from the rail and then carrying the garments supported by the device by hand."  (PH-459)

This conclusion logically leads to the question, if "curved upper internal surface" already meant internal with respect to the hook, why did Artemi add the language "located on an exterior of the ring and facing internally with respect to the hook"?  The answer is clearly demonstrated in the prosecution history: Artemi added the language to distinguish his device from prior art.[2]

---

[2]   Procedural limitations governing reissued patents only allowed Artemi to add the more explicit language to the new claims he pursued through reissue. (See PH-847)  If he added the language to the claims of the original patent, he would have risked losing rights.  This explains why some of the RE'568 patent claims include the additional language while others do not.

As Artemi discusses in his brief, the Examiner had originally rejected Artemi's claim as anticipated by Robertson.  (PH-175-76)  Artemi then explained why the Examiner "misapplied" the claim to Robertson, stating that "one of ordinary skill in the art . . . would readily understand that the 'curved upper internal surface' clearly refers to the upper surface 'internal' to the 'hook.'. . . One of ordinary skill in the art would understand that the upper surface of the 'ring' that is internal to the 'hook' is the only surface that facilitates carrying garments by allowing for the type of grasping depicted above."  (PH-174)

The Court holds that disputed terms 2 and 3 mean the same thing; they both refer to reference number 11 in Figure 1 Amended.


### D.

As to the last term-- "adjustable means for altering the distance between the second part and the first part"-- the parties agree that this is a means-plus-function element and that the function is to alter the distance between the first part and the second part.  The parties only dispute the means to perform the function.

The issue is whether a "stitched loop" is an "adjustable" structure disclosed by the patent. Artemi argues that it is; Safe-Strap argues that it is not.

According to Artemi, a stitched loop is adjustable insofar as the length of the loop can be adjusted by the manufacturer when the device is made at the factory. Artemi, in essence, argues that because a customer who buys the Spacemaker can place an order for a loop of a specific size, the stitched loop is "adjustable."

Safe-Strap on the other hand, argues that "adjustable" must mean adjustable only by a user. It reasons that a user cannot adjust a stitched strap without investing a relatively large amount of time and effort to tear out the existing stitching and re-stitch the strap, therefore a stitched loop is not adjustable.

The Court rejects Artemi's proposed construction and agrees with Safe-Strap that "adjustable" must mean adjustable by the user of the patented device.

First, the entire patent speaks of how the device is employed by *the user*. For example, as previously discussed, the device has a curved upper internal surface to facilitate carrying of a plurality of garments by a user, not by a manufacturer. Similarly, patent claims 14 through 16 disclose methods by which a user, not a manufacturer, can

14

use one or more of the patented device.  To conclude that
"adjustable" means adjustable not by the user, but rather by
the manufacturer, would be inconsistent with the rest of the
patent.

Second, the patent speaks of "stitching" as a means of
"*form[ing]*" "the loop;" it does not disclose stitching as a
means of *adjusting* the distance between the loop and the
rigid plastic part.  The patent discloses only a "latched
fastening fastener" as a means of adjusting the position of
the loop relative to the hooked portion.

Third, if "adjustable" meant adjustable by the
manufacturer, then any device that could be ordered to
certain specifications would be "adjustable."  But such a
broad definition cannot be reconciled with what "adjustable"
is commonly understood to mean, and Artemi cites no support
in the specification or the prosecution history for such an
understanding with regard to the patented device at issue.

Accordingly, the Court holds that "adjustable" means
adjustable by only the user of the device; "adjustable" does
not encompass a stitched loop.

15

**IV.**

For the foregoing reasons, the disputed terms are construed as set forth above.  An appropriate Order accompanies this Opinion.


Dated:  July 3, 2014                    ___s/ Joseph E. Irenas_____
                                        Joseph E. Irenas, S.U.S.D.J.